Filed 8/4/26  P. v. Gonzalez CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B347600 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA193832) |
| v. | |
| MARLON GONZALEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Renee F. Korn, Judge.  Affirmed.

Ralph H. Goldsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Marlon Gonzalez (defendant) appeals from the superior court's order denying his petition for resentencing pursuant to Penal Code[1] section 1172.6. The court appointed counsel for defendant and, after briefing, denied the petition at the prima facie stage on the ground defendant was ineligible for relief as a matter of law. We find no error and affirm the order.

## FACTS AND PROCEDURAL BACKGROUND

### I. Underlying offenses[2]

Defendant, Juan Zavala, and Eric Tasin were members of Mara Salvatrucha (MS) gang. Roberto Reyes was a former MS member who had recently insulted active MS gang members after a drive-by shooting incident at a nightclub, by calling them "punks" and "chickens."

Several weeks later Reyes went to a different nightclub and met some MS members, including Zavala, Tasin, and defendant. While outside the club, Reyes, Zavala, and defendant argued about the earlier shooting incident. Zavala invited Reyes to "kickback" at the apartment of Maria Diaz.

Reyes and Edwin Martinez, who was not associated with MS, went to Diaz's apartment. Reyes, Zavala, and Tasin went outside, and defendant followed a short time later. Martinez

---

[1]    All further undesignated statutory references are to the Penal Code.

[2]    We take these facts from our nonpublished opinion in defendant's direct appeal. (*People v. Gonzalez* (Mar. 7, 2005, B175485) [nonpub. opn.].) We briefly recount them for context and do not rely on them as part of the record of conviction in determining defendant's eligibility for relief as a matter of law.

2

stayed inside with two others.  The three men surrounded Reyes and asked him why he was not in the gang anymore.  Tasin whispered something in Zavala's ear and Zavala nodded.  The three men came closer to Reyes, who felt a stab wound in his chest.  Reyes fought back but soon ran away.  He ran until he fell on his back in the street.  Defendant came up to Reyes, who begged him to stop.  Defendant knelt beside Reyes and stabbed him three or four times on his left side.  Reyes, who suffered a total of 39 stab wounds, survived the attack.  Reyes identified defendant, Tasin, and Zavala as the men who attacked him, and defendant as the man who stabbed him last.

About 15 to 20 minutes after the men left the apartment, defendant, Tasin, and Zavala returned to the apartment without Reyes.  Zavala told his girlfriend, Tina Molina, they were leaving.  While Molina went to retrieve her belongings, Diaz, in her bedroom, overheard Zavala tell defendant, "we have to do this" or "you have to do this," and defendant said, "We can't do this here" or "You can't do this here," because Diaz would get mad.  Zavala told defendant he had to do what Zavala told him and said, "You can't let me down."  Moments later, Diaz heard the sound of fighting.

As Molina was leaving, she saw Martinez on the floor and defendant next to him making a stabbing motion.  Diaz saw defendant and others washing their hands in the bathroom.

When Diaz left the apartment a short time later, she saw Martinez lying on the floor.  Defendant told Diaz not to say anything "because you know we could kill you."

Two days later, police found Martinez's body in the trunk of a burning car.  He had died from 29 stab wounds inflicted using what appeared to have been a flat-head screwdriver.

3

## II.    Conviction

Defendant was charged with one count of first degree murder (§ 187; count 1) and one count of attempted willful, deliberate, and premeditated murder (§§ 187, 664; count 2).  The special circumstance that Martinez was killed because he was a witness to a crime (§ 190.2, subd. (a)(10)) was also alleged.  As to both counts, it was further alleged that defendant personally used a deadly weapon (§ 12022, subd. (b)(1)) and the offenses were "committed for the benefit of, at the direction of, or in association with a criminal street gang" (§186.22, subd. (b)(1)).

The jury convicted defendant as charged, found the murder in count 1 to be in the first degree, and found the attempted murder to be willful, deliberate, and premeditated.  The jury also found true the witness-killing special circumstance, as well as the personal use of a weapon and gang allegations.

The judgment was affirmed on appeal.  (*Gonzalez, supra*, B175485.)

## III.    Section 1172.6 resentencing proceedings

On July 26, 2024, defendant filed a petition for resentencing pursuant to section 1172.6.  The court appointed counsel.

The People argued defendant is not entitled to relief as a matter of law "because his jury was not instructed on felony murder, the natural and probable consequences doctrine or any other theory of liability where the jury could impute malice."  The People also argued defendant "was prosecuted as a principal to these crimes who acted with actual express malice," and the court's instructions all required the jury find defendant acted with the intent to kill.  Specifically, the jury was instructed on willful, deliberate, and premeditated first degree murder, which

4

required they find "a clear, deliberate **intent on the part of the defendant to kill**"; direct aiding and abetting, which also required defendant's intent to kill; and conspiracy to commit murder and attempted murder, which required "'the **specific intent** to commit the crime of **murder or attempted murder, and with the further specific intent to commit that crime**….'" (Boldface in original.)

No supplemental filing was offered by defendant or his counsel.

On May 23, 2025, a hearing to determine whether defendant had established a prima facie case for relief was held. The court indicated it reviewed the jury instructions and noted, the jury was not instructed on felony murder or natural and probable consequences. The court discussed the jury's findings, including the finding that defendant personally used a knife during the murder and attempted murder.

Defense counsel conceded defendant's jury was not instructed with felony murder or natural and probable consequences but argued the jury was instructed with the gang allegation, "which in [her] opinion, … could have influenced the jury to … impute intent to kill." The People disagreed and reiterated defendant was prosecuted under theories of liability that remain valid.

The court denied defendant's petition finding "the jury instructions established conclusively, that [defendant] is ineligible for relief."

Defendant timely filed a notice of appeal.

## DISCUSSION

Defendant contends, though his jury was not instructed regarding felony murder or natural and probable consequences,

5

under CALJIC No. 6.11, "the jury could have had a doubt whether the attacks on Reyes and Martinez were intended **by [defendant]** to result in death" (boldface in original) because that instruction "conveys a form of vicarious liability for crimes committed by fellow participants in a conspiracy" (capitalization omitted).  We disagree.

## I.    Applicable legal principles and standard of review

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) made "ameliorative changes to our state's homicide law."  (*People v. Patton* (2025) 17 Cal.5th 549, 558 (*Patton*).)  "As part of these ameliorative changes, malice, a key element the People must prove in a murder prosecution, may no longer be imputed to a defendant solely because the defendant participated in another crime."  (*Ibid.*)  That means, a person may not be convicted of a murder committed by someone else without proof that the nonkiller defendant personally harbored an intent to kill or was a major participant who acted with reckless indifference to human life.  (§§ 188, subd. (a)(3) & 189, subd. (e).)

For those who were previously convicted of murder under one of these now invalid theories, the Legislature provided a mechanism through which that individual may be resentenced.  (*Patton, supra*, 17 Cal.5th at p. 558.)  The Legislature has since "expanded this path to allow relief for those with 'attempted murder' convictions based on 'the natural and probable consequences doctrine.'"  (*Ibid.*; see § 1172.6, subd. (a); Stats. 2021, ch. 551, § 2.)

A petition that includes a declaration the petitioner is eligible for relief entitles the petitioner to counsel.  (§ 1172.6, subd. (b).)  "'After the parties have had an opportunity to submit

briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief.'" (*Patton, supra*, 17 Cal.5th at p. 559.)  If the petitioner makes a prima facie showing, then the trial court issues an order to show cause and holds a hearing to determine whether to vacate the conviction and to recall the sentence and resentence the petitioner.  (*Ibid.*)

At the prima facie stage of the petition process, the court may not engage in factfinding about the petitioner's culpability but should deny a petition if the petitioner fails to make a prima facie showing.  (*Patton, supra*, 17 Cal.5th at p. 563.)  "'The record of conviction will necessarily inform the trial court's prima facie inquiry … , allowing the court to distinguish petitions with potential merit from those that are clearly meritless.  This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed' without the need for an evidentiary hearing."  (*Ibid.*)  "'"[I]f the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner.'"'  (*Ibid.*)  In other words, "'[i]f the petition and record in the case establish *conclusively* that the [petitioner] is ineligible for relief, the trial court may dismiss the petition'" at the prima facie stage.  (*People v. Curiel* (2023) 15 Cal.5th 433, 450 (*Curiel*), italics added.)

This court independently reviews the trial court's determination that defendant failed to make a prima facie case for relief.  (*People v. Cunningham* (2025) 112 Cal.App.5th 1243, 1248.)

## II.     Relevant background

Using CALJIC Nos. 3.00 and 3.01, the jury was instructed defendant could be liable for both counts as either a direct perpetrator or as a direct aider and abettor.  Relevant here, using CALJIC Nos. 6.10.5 and 6.11, the jury was also instructed defendant could be guilty as a conspirator to murder and attempted murder.[3]

The jury was instructed using CALJIC Nos. 8.10, defining murder, including the requirement of malice; 8.11, defining express and implied malice; and 8.20, defining first degree murder, including the requirement of express malice.  The jury was instructed regarding second degree murder using CALJIC Nos. 8.30 and 8.31.  Using CALJIC Nos. 8.66 and 8.67, the jury was instructed about willful, deliberate, and premeditated attempted murder, including the requirement of express malice and the "unambiguous [specific] intent to kill."

The jury was also instructed regarding the witness-killing special circumstance using CALJIC Nos. 8.81.10 and 8.83.1.

During closing argument, the People argued defendant's liability could rest on three potential theories: (1) "the actual stabber," (2) a direct aider and abettor, or (3) a coconspirator to murder and/or attempted murder.

As noted, the jury found defendant guilty of first degree murder and willful, deliberate, and premeditated attempted murder.  The jury found true the special circumstance that Martinez was killed because he was a witness to a crime, and, in

---

[3]     With regard to conspiracy, the jury was instructed using CALJIC Nos. 6.10.5, 6.11, 6.12, 6.13, 6.14, 6.16, 6.17, 6.18, 6.19, 6.20, 6.21, and 6.24.  However, defendant takes issue only with CALJIC No. 6.11.

8

both counts, the jury found true the offenses were committed for the benefit of the gang and defendant personally used a knife.

**III. Defendant is ineligible for resentencing as a matter of law as no theory of imputed malice was presented to the jury, and each theory of liability required defendant's intent to kill**

Preliminarily, regarding the attempted murder of Reyes, we note the plain language of section 1172.6, subdivision (a)(1) allows a person to file a petition for relief when that "person [was] convicted of … [¶] … attempted murder under the natural and probable consequences doctrine." Here, the jury was not instructed on natural and probable consequences as the theory of liability for the attempted murder. Thus, relief on count 2 is precluded. (See *People v. Muhammad* (2024) 107 Cal.App.5th 268, 276 ["with respect to attempted murder, section 1172.6 affords relief only to a person convicted under the natural and probable consequences doctrine"].) However, because defendant argues CALJIC No. 6.11 allowed the jury to convict under a theory of natural and probable consequences and imputed malice as to both counts 1 and 2, we will address both counts together.

Defendant's jury was not instructed on a felony murder theory, the natural and probable consequences doctrine, or on any other theory where malice could be imputed to defendant simply based on his participation in a crime. Instead, in both counts 1 and 2, the jury was presented with three potential theories of liability: (1) direct perpetrator, (2) direct aider and abettor, and (3) coconspirator in an uncharged conspiracy to commit murder and attempted murder. We start with the conclusion each of these remains a valid theory of murder or

9

attempted murder liability, and none required the jury to impute malice to defendant.

First, if the jury found defendant was the direct perpetrator, they found he had the specific intent to kill Martinez and Reyes without imputing malice. (See *People v. Fisher* (2023) 95 Cal.App.5th 1022, 1029 [where defendant was the actual killer, he "could not have been convicted under the natural and probable consequences doctrine, so malice could not have been imputed to him under that theory"].)

Second, if the jury found defendant was a direct aider and abettor to Martinez's murder and/or Reyes's attempted murder, they necessarily found he acted with knowledge of his cohort's "unlawful purpose" and "[w]ith the intent or purpose of committing or encouraging or facilitating the commission of the [murder and/or attempted murder]." (CALJIC No. 3.01; see also *People v. McCoy* (2001) 25 Cal.4th 1111, 1118 ["when the charged offense and the intended offense—murder or attempted murder—are the same, i.e., when guilt does not depend on the natural and probable consequences doctrine, … the aider and abettor must know and share the murderous intent of the actual perpetrator"].) Direct aiding and abetting remains a legally permissible theory of liability. (See *People v. Williams* (2022) 86 Cal.App.5th 1244, 1252 ["It is well settled that Senate Bill 1437 'does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder [or attempted murder] must possess malice aforethought.'"].)

Furthermore, because the jury found the murder was in the first degree, the jury would have also necessarily found defendant aided and abetted a "willful, deliberate and premeditated killing with express malice aforethought" (CALJIC No. 8.20); and,

10

because the jury found the attempted murder was "willful, deliberate and premeditated," the jury would have necessarily found he aided and abetted a "direct but ineffectual act" to kill Reyes with the "specific intent to kill" him, and his intent to do so was formed after "careful thought and" consideration (CALJIC Nos. 8.66 & 8.67).

Third, at issue here, if the jury found defendant was a coconspirator in an uncharged conspiracy to commit murder and/or attempted murder, they necessarily found he harbored the specific intent to kill Martinez and/or Reyes. Here, CALJIC No. 6.10.5 instructed, "A conspiracy is an agreement between two or more persons *with the specific intent* to agree to *commit the crime of murder or attempted murder,* and *with the further specific intent to <u>commit that crime</u>*" (italics and underscoring added).

"[C]onspiracy is a specific intent crime requiring an intent to agree or conspire, and a further intent to commit the target crime, here murder [and attempted murder[4]], the object of the conspiracy. Since murder committed with intent to kill is the functional equivalent of *express malice* murder, conceptually speaking, no conflict arises between the specific intent element of conspiracy and the specific intent requirement for such category

---

[4] We note, attempted murder is a specific intent crime requiring the person to have "harbored express malice aforethought, namely, a specific intent to kill." (CALJIC No. 8.66.) In contrast to murder, which "does not require the intent to kill," "'[a]ttempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.'" (*People v. Smith* (2005) 37 Cal.4th 733, 739.)

11

of murders.  Simply put, where the conspirators agree or conspire with specific intent to kill and commit an overt act in furtherance of such agreement, they are guilty of conspiracy to commit express malice murder."  (*People v. Swain* (1996) 12 Cal.4th 593, 602 (*Swain*).)  Thus, notwithstanding the jury's explicit finding that the murder here was in the first degree, "'*all* conspiracy to commit murder is necessarily conspiracy to commit premeditated and deliberated first degree murder.'"  (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 641, italics added.)

Defendant takes issue with CALJIC No. 6.11 because CALJIC No. 6.11 instructed the jury that, as a member of a criminal conspiracy, defendant "is liable for each act … of every other member of the conspiracy if that act … is in furtherance of the object of the conspiracy," defendant argues he could have been found "vicarious[ly] liab[le] for crimes committed by fellow participants" of the conspiracy.  (Capitalization omitted.)  So understood, defendant contends "the jury would have convicted [him] of malice murder and attempted murder based on the mental state of [his cohort,] Zavala, who was giving orders."  (Underscoring omitted.)  He argues, by "making [co]conspirators liable for the acts of other conspirators done in the course and scope of the conspiracy, [CALJIC No. 6.11] is inconsistent with the legislative intent of SB 1437 and the changes that enactment made to sections 188 and 189."  Not so.

"Murder liability based on an uncharged conspiracy to commit murder [or attempted murder] remains a valid legal theory because it requires proof that the defendant acted with express malice regardless of whether he was the actual killer.  (See *People v. Medrano* (2021) 68 Cal.App.5th 177, 185 [conspiracy to commit murder requires proof that the defendant

12

had the intent to kill].)" (*People v. Virgen* (2025) 110 Cal.App.5th 440, 451 (*Virgen*).)

By contrast, "a defendant may no longer be convicted of murder based on a theory that he or she conspired to commit a *nonmurder offense* because such a theory imputes malice to the defendant based on his or her participation in the nonmurder offense, without any need to find the defendant acted with actual malice. (*People v. Offley* (2020) 48 Cal.App.5th 588, 599 (*Offley*).) That is, murder based on a conspiracy to commit a crime other than murder operates in the same manner as the natural and probable consequences doctrine. (See *People v. Rivera* (2015) 234 Cal.App.4th 1350, 1356 (*Rivera*) [explaining that a natural and probable consequences theory of murder and murder based on an uncharged conspiracy to commit a crime other than murder are 'analogous'].)" (*Virgen, supra*, 110 Cal.App.5th at p. 451, italics added.)

Acknowledging this distinction, defendant puts a finer point on his argument, arguing "the direct language of CALJIC [No.] 6.11 making all participants equally guilty, and … not depend[ent] on foreseeability." He distinguishes *People v. Nguyen* (2024) 103 Cal.App.5th 668, which also involved a conspiracy to commit murder, and argues, unlike *Nguyen*, the instructions in this case "did not define conspiracy to commit murder" and did not "distinguish between conspiracy to commit murder and conspiracy to commit a 'nonmurder offense.'" Therefore, he avers, "[i]t was sufficient that there was any conspiracy." We disagree.

CALJIC No. 6.11 does not operate in a vacuum. Rather, it works together *with* CALJIC No. 6.10.5, which requires the jury to find defendant personally harbored the specific intent to kill

13

and informs the jury the object of the conspiracy was murder and attempted murder. "'"[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction."'" (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1248; see also CALJIC No. 1.01 [instructed the jury not to "single out any particular sentence or any individual point or instruction and ignore the others[, and to c]onsider the instructions as a whole and each in light of all the others"].) CALJIC No. 6.11 attributes the acts and words (actus reus) of coconspirators "in furtherance of the object of the conspiracy" to fellow conspirators. It does not attribute or impute the mental state (mens rea) of one coconspirator to another. Thus, by the time CALJIC No. 6.11 enters the calculation to attribute a coconspirator's act(s) to defendant, the jury has already found the conspiracy to commit murder and/or attempted murder applied and, as a result, defendant intended to kill. Simply put, malice is not being imputed to defendant through operation of the conspiracy. By finding defendant conspired to commit murder/attempted murder, defendant has brought his own malice to the table. (See *Swain, supra*, 12 Cal.4th at pp. 602–603 [conspiracy to commit murder requires each coconspirator to personally harbor express malice].)

After reviewing the instructions, we find there is "no reasonable likelihood the jury misunderstood or misapplied the law." (*People v. Estrada* (2022) 77 Cal.App.5th 941, 948; also *People v. Allen* (2023) 97 Cal.App.5th 389, 397.) The jury either found defendant was the direct perpetrator, a direct aider and abettor, or a coconspirator to a conspiracy to commit murder and

14

attempted murder.  Any one of these theories required defendant personally harbor the intent to kill.

In addition to finding defendant guilty of first degree murder and willful, deliberate, and premeditated attempted murder, we note, the jury also found true "defendant had the required specific intent" to intentionally kill Martinez to prevent him "from giving testimony in a criminal proceeding" (see § 190.2, subd. (a)(10); CALJIC Nos. 8.81.10 & 8.83.1) and that defendant personally used a knife in the commission of the murder of Martinez and attempted murder of Reyes (see § 12022, subd. (b)(1)).  Thus, while these additional true findings may not, on their own, establish section 1172.6 ineligibility, they need not carry such weight here.  These additional jury findings operate to corroborate what the jury instructions and verdicts already establish—that defendant personally acted with express malice. The jury verdicts and jury instructions conclusively establish defendant's ineligibility as a matter of law.  (See *Curiel, supra*, 15 Cal.5th at p. 470.)

## IV.   Section 1172.6 does not provide a mechanism for reduction of murder from first to second degree

To the extent defendant asks this court to reduce count 1 to second degree murder pursuant to *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*), we decline his invitation.  As discussed *ante,* we have addressed defendant's challenge to the trial court's denial of his section 1172.6 petition.  While related, the remedies provided for by filing a section 1172.6 petition and filing a petition for writ of habeas corpus alleging *Chiu* error are different.  "Reducing a first degree murder conviction to second degree murder is not an option under section 1172.6" (*People v. Gonzalez* (2023) 87 Cal.App.5th 869, 881) and a "'habeas corpus

15

action is not a resentencing petition under section [1172.6], [where] Senate Bill 1437 is inapplicable and *Chiu* … governs'" (*People v. Perez-Tinoco* (2025) 115 Cal.App.5th 861, 874).

Moreover, section 1172.6, subdivision (f) provides, "This section does not diminish or abrogate any rights or remedies otherwise available to the petitioner." Therefore if defendant believes he has grounds to file a habeas action on the basis of *Chiu* error, he may do so. However, we note, *Chiu* abrogated first degree murder for aiders and abettors under the natural and probable consequences doctrine, holding "an aider and abettor may not be convicted of first degree *premeditated* murder under the natural and probable consequences doctrine. Rather, his or her liability for that crime must be based on direct aiding and abetting principles." (*Chiu, supra*, 59 Cal.4th at pp. 158–159.) As discussed, defendant's jury was not instructed on natural and probable consequences theory of liability, and, for the reasons expressed herein, the conspiracy instructions given in defendant's case did not operate to impute malice to defendant based on the actions of his coconspirators.

## DISPOSITION

The order is affirmed.


CHAVEZ, J.


We concur:


LUI, P. J.                    GOORVITCH, J.


16